**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| DEVON EMINGER, et al., | |
| Plaintiffs, | |
| v. | CASE NO. 1:24-CV-444-HAB-ALT |
| KENDALLVILLE CITY OF, et al., | |
| Defendants. | |

## OPINION AND ORDER

Plaintiffs Devon Eminger ("Eminger") and Natalie Minks ("Minks") (collectively "Plaintiffs") brought suit under 42 U.S.C. §1983 alleging constitutional violations against a host of defendants from Indiana and Ohio, including: the City of Kendallville, the Kendallville Police Department, Sergeant Justin Beall, and Officer Brody Fretz (collectively "Kendallville Defendants"), as well as the Henry County Sheriff's Department and Deputy Ryan Daman (collectively "Ohio Defendants"). The Kendallville Defendants moved for partial judgment on the pleadings (ECF No. 69), and the Ohio Defendants have moved to dismiss. (ECF No. 122). Briefing on both motions has been completed. (ECF Nos. 70, 76, 81, 127) and the motions are ripe for consideration. For the reasons below, both motions will be granted.

### I.    LEGAL STANDARD

The standards for evaluating a Rule 12(b)(6) motion to dismiss also govern a Rule 12(c) motion for judgment on the pleadings. *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). Indeed, "[t]he only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same." *Federated Mutual Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). Under either rule, all plausible allegations and reasonable

inferences are viewed in the light most favorable to the non-moving party. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). That means that, "under Rule 12(c), as under Rule 12(b)(6), the factual allegations in the complaint, accepted as true, must 'raise a right to relief above the speculative level' for the suit to proceed any further." *Wolf v. Riverport Ins. Co.,* 132 F.4th 515, 519 (7th Cir. 2025) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Original Complaint[1]

Eminger is the mother of original Plaintiffs Aubree Shuman ("Shuman")[2] and Minks.[3] (ECF No. 4). Plaintiffs allege that on January 3, 2023, Shuman was driving Minks home in Kendallville when she realized her headlights were off; she then turned them on and kept driving until she pulled into the driveway of Eminger's residence. (*Id.* at 2). As their car pulled into the driveway, Shuman noticed the flashing lights of a police vehicle behind them. (*Id.*)

Once stopped, Sergeant Justin Beall ("Sgt. Beall"), an officer with the Kendallville Police Department, informed the women that he had pulled them over because he saw Shuman turn her headlights on after she had started driving. (*Id.* at 3). Shuman handed over her license and registration. Sgt. Beall claimed he smelled marijuana and asked if either of the women had been smoking in the car, which they denied. (*Id.*) Sgt. Beall returned to his vehicle and then

---

[1] Plaintiffs have filed several amended complaints in which they assert new claims and add new parties. *See* ECF Nos. 43, 62. Given that the motions by both sets of Defendants rely on challenges to the timeliness of the additional claims and whether those claims relate back, the Court will include the facts and claims alleged in the Original Complaint, though it is not the operative complaint on record.

[2] Although Shuman was initially involved in the suit, she has not participated in case proceedings since July 2025 and has not appeared or been named as a plaintiff in any amended complaint.

[3] Because Minks was a minor when the original complaint was filed, she was referred to in the complaint only by her initials, N.M. (ECF No. 4). During a case status conference held by Magistrate Judge Andrew Teel on July 31, 2025, the parties agreed that because Minks is no longer a minor, she should be a named party. (ECF No. 22).

reapproached Shuman's car with a drug-detecting dog before asking Shuman and Minks to exit the car so it could be searched. (*Id.*)

By the time the women exited the vehicle, Officer Brody Fretz ("Officer Fretz") had arrived on the scene. Off. Fretz conducted a pat down of Shuman, uncovering no contraband. (*Id.*) Sgt. Beall informed Minks, who at the time was a minor, that she, too, would be patted down; Minks responded that , she did not want to be searched without a parent present and asked that she be searched by a female officer. (*Id.*) Minks attempted to phone both of her parents, but to no avail— her father was away from home and unable to make it to the scene, and her mother, Eminger, did not answer the call. (*Id.*) As they were waiting, Minks placed her hands into her sweatpants pockets to keep her hands warm, which Sgt. Beall allegedly took as an indication that Minks was hiding something. (*Id.* at 4). Minks then pulled her pockets inside out to demonstrate the pockets were empty. (*Id.*) Eventually, Shuman was allowed to go inside the home to summon Eminger. (*Id.*)

While Sgt. Beall maintained that he would call a female officer to the scene, none arrived. (*Id.*) Instead, Sgt. Beall performed a pat-down of Minks himself, sticking his hands in her sweatpants pockets as well as putting his hand through her sweatshirt pocket—without the consent of Minks or Eminger. (*Id.*) Ultimately, the searches of Shuman's car as well as Shuman and Minks themselves revealed no contraband. (*Id.* at 5). Plaintiffs maintain that Sgt. Beall's claim that he smelled marijuana was false and used as "pretext . . . in order to intimidate, and as an unsupported excuse to further detain" Shuman and Minks, as well as to search them and their vehicle. (*Id.*)

On September 24, 2024, Shuman, Minks, and Eminger filed suit against the City of Kendallville, Sgt. Beall, and Off. Fretz in the Noble Superior Court, claiming the Defendants subjected Shuman and Minks to an unreasonable search and seizure in violation of the Fourth Amendment. (*Id.*) The Complaint also alleged the City of Kendallville was liable to the Plaintiffs

3

"for the state tort acts of false arrest to which Plaintiff Ms. Shuman and Plaintiff [Minks] were subjected by Defendants Beall and Fretz." (*Id.* at 6). Plaintiffs claimed that they suffered "inconvenience" due to the Defendants' allegedly unconstitutional actions, and that Shuman and Minks were subjected to "mental anguish, emotional distress, a wrongful loss of freedom and liberty, invasion of their privacy, and other damages and injuries." (*Id.* at 5). Plaintiffs sought compensatory and punitive damages as well as reasonable attorney's fees and costs. (*Id.* at 6).

On October 21, 2024, Defendants removed the case to this Court. (ECF No. 1).

### B. First Amended Complaint[4]

On October 7, 2025, Plaintiffs Eminger and Minks—now proceeding pro se—filed their First Amended Complaint. (ECF No. 43).

Plaintiffs allege that on January 3, 2023, at around 9:00 PM Sgt. Beall and Officer Fretz "initiated a stop involving Plaintiffs." (*Id.*) Plaintiffs claim that the footage from the officers' body-worn cameras shows Eminger "expressly questioned and withheld consent to an invasive search of her minor daughter, Plaintiff Minks." (*Id.*) Though neither Eminger nor Minks consented, Sgt. Beall conducted a search. (*Id.*) Additionally, Plaintiffs claim Sgt. Beall "arrested Plaintiff Eminger on a purported felony offense though the offense was, infact [*sic*], a misdemeanor, and the out-of-state warrant did not bear a governor's signature authorizing extradition." (*Id.*)

The Complaint alleges that the Defendants searched Minks without valid consent and arrested Eminger "under false pretenses," and that "footage and records" would show "a broader pattern of consent-less searches overseen by Sgt. Beall." (*Id.*) Plaintiffs sought punitive damages for the Individual Defendants' "willful/reckless conduct," a declaration that the Defendants'

---

[4] Although originally represented by counsel, Plaintiffs' counsel withdrew on July 31, 2025. (ECF No. 22). Plaintiffs attempted to file an Amended Complaint on August 12, 2025 (ECF No. 24) which was stricken by Magistrate Judge Andrew Teel because the filing was made without leave of the Court or consent of the Defendants. (ECF No. 26).

conduct violated the Plaintiffs' constitutional rights, and "injunctive relief as warranted (e.g., training/audit measures regarding consent searches and BWC documentation)." (*Id.* at 2).

### C. Second Amended Complaint

In response to the Kendallville Defendants Motion for More Definite Statement (ECF No. 44), Plaintiffs moved for leave to file a second amended complaint (ECF No. 54). The Court granted leave and the Second Amended Complaint (ECF No. 62) is now the operative complaint of record.

The Second Amended Complaint retains the original Kendallville Defendants and adds three extra defendants: the Kendallville Police Department, the Henry County (Ohio) Sheriff's Department, and Deputy Ryan Daman ("Dep. Damon") of the Henry County Sheriff's Department (the latter two referred to as the Ohio Defendants).

Beyond the facts regarding the January 3, 2023, traffic stop and search of Minks, *see id.* at 4, ¶¶ 11–16, the Second Amended Complaint asserts a series of new factual claims:

- On or about October 24, 2022, Eminger "became the subject of a criminal investigation related to alleged unauthorized PayPal transactions," and that this investigation was conducted by Dep. Daman. (*Id.* at 4). Plaintiffs claim that "officers from the Kendallville Police Department allegedly conveyed false or misleading information that was relied upon to initiate charges of theft against []Eminger" and that the charges "were later dismissed in their entirety" (*Id.*);

- During the events of the January 2023 stop, Sgt. Beall informed Eminger that she was being arrested (*Id.*);

- Following the January 2023 incident, Eminger contacted the Kendallville Chief of Police in May 2023 to report the misconduct by Sgt. Beall and Off. Fretz. (*Id.* at 5). Yet no disciplinary action was taken, and Sgt. Beall was promoted to the position of School Resource Officer, which placed Sgt. Beall in Minks' school in an official, daily capacity, and which further caused Minks to suffer such emotional distress that she ultimately permanently withdrew from school (*Id.*);

Without specifying dates, the Second Amended Complaint also alleges a series of harassing actions presumably over the span of years conducted by Sgt. Beall and other Kendallville police officers against Eminger, including:

- Prior to the January 2023 incident, Sgt. Beall harassed Eminger at her place of employment, including "direct[ing] a prolonged, hostile glare" at Eminger and making "disparaging remarks" about Eminger to her employer (*Id.*);

- Law enforcement officers—which Plaintiffs believe to include Sgt. Beall and Off. Fretz—attempted to conduct a "welfare check" at Eminger's residence, including contacting Eminger's landlord and requesting access to her residence, which her landlord denied (*Id.* at 6);

- In July 2019, Sgt. Beall contacted Eminger about Minks—at the time twelve years old—allegedly violating curfew and informed Eminger that Sgt. Beall "intended to contact the Department of Child Services (DCS) the next time he saw her out past curfew" (*Id.*);

- After the January 2023 incident, Sgt. Beall "intentionally struck and killed one of [Plaintiffs'] pet cats with his police vehicle near their home" (*Id.*); and

- Following the cat incident, Sgt. Beall on numerous occasions monitored Plaintiffs' home, including parking near the residence for extended periods, conducting surveillance on visiting vehicles, and initiating traffic stops against Eminger's boyfriend (*Id.* at 6–7).

The Amended Complaint asserts five constitutional claims pursuant to 42 U.S.C. § 1983. First, that Defendants Sgt. Beall, Off. Fretz, and Dep. Daman violated the Fourth Amendment when Sgt. Beall "conducted a non-consensual, warrantless search of Plaintiff [] Minks" and when "Defendants sought to gain warrantless access to [] Eminger's residence by soliciting entry from her landlord under the pretext of a 'welfare check.'" (*Id.* at 7). Second, Defendants Sgt. Beall, Off. Fretz, and Dep. Daman violated the Fourth and Fourteenth Amendments when they "caused or facilitated the arrest and prosecution of [] Eminger without probable cause, based on false or misleading information," specifically that Dep. Daman "pursued criminal charges against [] Eminger that were ultimately dismissed in full" and which resulted in a prosecution that "lacked

factual support, was initiated in bad faith, and was motivated by improper purposes or reckless indifference to the truth." (*Id.* at 8). Third, the law enforcement Defendants violated Plaintiffs' First Amendment rights by engaging in harassing conduct in retaliation to Plaintiffs exercising "rights protected by the First Amendment, including the right to consult legal counsel, object to unlawful searches, and document their interactions with law enforcement." (*Id.*) Plaintiffs contend Sgt. Beall made disparaging remarks to Eminger's employer and targeted her home and visitors with surveillance and unlawful traffic stops and investigations. (*Id.*). Fourth, Defendants Sgt. Beall and Off. Fretz used excessive force in violation of the Fourteenth Amendment by "subject[ing] Plaintiffs to unnecessary and unduly aggressive treatment," including the unlawful detention and intimidation of a minor. (*Id.* at 8–9). Fifth, the municipal Defendants—City of Kendallville, Kendallville Police Department, and Henry County Sheriff's Department—failed to properly train and supervise officers. As alleged, the City of Kendallville and its Police Department failed to discipline Sgt. Beall after allegedly repeated violations of department policy and constitutional standards, and the Henry County Sheriff's Department "failed to supervise or investigate the conduct of Dep. Ryan Daman, who pursued unfounded criminal charges against [] Eminger based on unsupported or misleading information." (*Id.* at 9).

## III.    ANALYSIS

One glance at the docket—with filings numbering well into the triple digits despite the early procedural posture—reveals that this case can be summed up in one word: messy. What started out as a relatively straightforward § 1983 case based on an allegedly unconstitutional traffic stop has turned into a jumble of claims featuring a new plaintiff, multiple new defendants and legal issues, and new factual allegations spanning the course of several years, rather than one January

night. To make matters more convoluted, Plaintiffs have worded their amended complaint as if both are equally entitled to recover for each claim.

It stands to reason then, that both sets of defendants have filed Rule 12 motions. The Kendallville Defendants have moved under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings as to all claims brought by Eminger, as well as all claims asserted against the City of Kendallville and the Kendallville Police Department. The Ohio Defendants have moved for dismissal under Rule 12(b)(6) for all claims against them. As both sets of defendants have moved to dismiss Eminger's claims as untimely, the Court will address those arguments together before discussing any remaining claims.

### A. Eminger's Claims

Both the Kendallville Defendants and the Ohio Defendants argue that Eminger's claims are untimely. The Kendallville Defendants argue the underlying conduct prompting her claims—Eminger's arrest the night of Minks's traffic stop—occurred more than two years before she first joined as a plaintiff and attempted to bring the claims, making any claims time-barred under the two-year statute of limitations. (ECF No. 70 at 6). The Ohio Defendants contend much the same: the only factual allegations raised in the Second Amended Complaint that reference Dep. Daman is a theft investigation and arrest which culminated in a dismissal of criminal charges on May 8, 2023, making her claims against the Ohio Defendants likewise time-barred. (ECF No. 122). Both sets of defendants also assert that the relation-back doctrine under Federal Rule of Civil Procedure 15(c) would not save Eminger's claims. Plaintiffs, citing no relevant legal authority, argues Eminger's claims should not be dismissed because (a) she reasonably relied on her former counsel's work, and because of his alleged deficiencies she did not know all material facts necessary to plead her claims before the statute of limitations expired, *see* ECF No. 76 and (b) her

claims against the Ohio Defendants "arise from the same chain of events connected to the underlying investigation and prosecution," ECF No. 127-1.

### i.  Claims against Kendallville Defendants

Section 1983 claims are subject to the statute of limitations for personal injury actions in the state in which the alleged injury occurred. *Behav. Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005). In Indiana, the statute of limitations is two years. *Id.* (citing Ind. Code § 34-11-2-4). But while state law determines the length of the limitations period, the date of accrual of the cause of action is determined by federal law. *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). A § 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Id.* (quoting *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992)).

That said, an argument that a claim is barred by the statute of limitations is an affirmative defense, and a plaintiff does not have to "anticipate or overcome" it in the complaint. *Covington v. Mitsubishi Motor Mfg. of Am., Inc.*, 154 Fed. App'x 523, 524 (7th Cir. 2005). Thus, a complaint will not fail under a motion to dismiss standard simply because a "defense is potentially available." *United States v. N. Tr.. Co.*, 372 F.3d 886, 888 (7th Cir. 2004). Rather, dismissal based on "an affirmative defense is appropriate only where the plaintiff pleads [itself] out of court by 'admit[ting] all the ingredients of an impenetrable defense.'" *Covington*, 154 Fed. App'x at 525 (quoting *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)).

In response, Plaintiffs apparently concede that the date of accrual for Eminger's claims against the Kendallville Defendants was January 3, 2023, when she was arrested following Minks' traffic stop. *See* ECF No. 76 at 2. Plaintiffs instead argue that the statute of limitations should be tolled because she "reasonably relied on retained counsel's affirmative representations that her

claims were being properly investigated, timely asserted, and preserved." *Id.* Plaintiffs also note that they terminated counsel and independently reviewed the records, and only at that point "discovere[ed] material deficiencies and omissions." *Id.*

Plaintiffs' argument is unpersuasive, to say the least. They include no indication, allegation, or evidence as to what those deficiencies and omissions were, on what date they were discovered, or why those alleged issues somehow kept Eminger from asserting her claims until well after the limitations period had run. Further, they provide no substantive legal argument for tolling her claims, and the Court is disinclined to believe the bald assertions that her reliance on counsel rendered her unable to bring her claims earlier. Further, as the Kendallville Defendants point out, even if counsel *did* omit Eminger's claims without her knowledge, the Seventh Circuit has consistently held "that clients are bound by their counsel's conduct." *In re Sterling*, 933 F.3d 828, 833 (7th Cir. 2017); *see also Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) ("[T]he clients are principals, the attorney is an agent, and under the law of agency the principal is bound by his chosen agent's deeds.").

The Court agrees with the Kendallville Defendants that Eminger's constitutional claims against them accrued on January 3, 2023, meaning she needed to assert any claims arising from her arrest by January 3, 2025, to avoid her claims being time-barred. The earliest that Eminger tried to become a plaintiff in her own right—rather than purely as a representative for her minor child's interests—was August 12, 2025, with her first attempt to file an amended complaint and add her own claims to that of her daughter. *See* ECF No. 24 (summarily stricken by Magistrate Judge Teel, ECF No. 26).

The Court also agrees that Eminger's claims do not sufficiently relate back to the original pleading to save her claims from being time-barred. "Under the relation-back doctrine, an amended

complaint is deemed filed on the date the original complaint was filed for the purpose of tolling the statute of limitations." *Moore v. Allstate Ins. Co.,* 928 F. Supp. 744, 752 (N.D. Ill.1996). While the "express terms" of Rule 15(c) do not specifically address how Courts should approach "an attempt to add a new party plaintiff to assert claims against the existing defendants," *Olech v. Village of Willowbrook*, 138 F. Supp. 2d 1036, 1041 (N.D. Ill. 2000), Seventh Circuit courts generally require four elements to be met: "(1) the new plaintiff's claim arose out of the same conduct, transaction or occurrence set forth in the original complaint; (2) the new plaintiff shares an identity of interest with the original plaintiff; (3) the defendants have fair notice of the new plaintiff's claim; and (4) the addition of the new plaintiff will not cause the defendants prejudice," *Williams v. State Farm Mut. Auto. Ins. Co.*, 678 F. Supp. 3d 980, 998 (N.D. Ill. 2023); *see also Hill v. Shelander*, 924 F.2d 1370, 1377 (7th Cir. 1991) ("The very purpose underlying relation back is to permit amendments to pleadings when the limitations period has expired, so long as the opposing party is not unduly surprised or prejudiced.").

Plaintiffs declined to address this issue, but the conclusion is nevertheless clear. Even if the Court accepted that Eminger's new claim for false arrest "arose" out of the same occurrence as the original complaint—given that the traffic stop and her arrest all occurred in one night—she does not share a legal identity of interest with Minks.

"Parties share an identity of interest when there is a relationship so close that a court can conclude that a defendant had notice of a new party's potential claims and thus would not suffer any prejudice by the party's addition." *Olech*, 138 F. Supp. 2d at 1045. For instance, parties have been found to share an identity of interest when they allege the same or fairly similar injuries or claims arising from the same type of conduct by the same defendant. *See, e.g., Williams*, 678 F.3d at 998 (finding new plaintiffs shared an identity of interest with the original plaintiffs because

"they have all alleged similar injuries from [defendant's] use of the typical-negotiation adjustment"); *Hawkins v. Groot Indus., Inc.*, 210 F.R.D. 226, 232 (N.D. Ill. 2002) ("It is clear that the Hispanic plaintiffs' claims arose out of the same alleged conduct as found in the African–American plaintiffs' original complaint—a pattern and practice of harassment and discrimination against both black and Hispanic employees. Each set of plaintiffs share an "identity of interests" because they are the alleged victims of the same type of conduct."); *Olech*, 138 F. Supp. 2d at 1045 n.5 (holding husband and wife shared an identity of interest because "the alleged conduct by and toward Ms. Olech and her husband are identical, as are the types of injury they allegedly suffered"). Here, Minks' alleged injury is based on an unconstitutional search under the Fourth Amendment; Eminger's alleged injury is based on her arrest by Sgt. Beall, which she believes occurred without probable cause (despite her admission that there was an active warrant for her arrest). Simply put, these are different constitutional injuries arising from different types of conduct by the same defendant, meaning they do not share an "identity of interest" sufficient to allow relation back.

Likewise, nothing in the record suggests that the Kendallville Defendants had any awareness of Eminger's potential claims before the August 12, 2025, amended complaint's attempted filing, meaning there is "no indication that defendants had notice of plaintiffs' new claims at any time before the expiration of the limitations period." *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 742 (7th Cir. 2018). And as to prejudice, one need only look at the docket since Eminger joined as a plaintiff to see that this case has become extraordinarily unwieldy following her addition to an otherwise straightforward § 1983 case.

Plaintiffs have thus failed to establish that Eminger's claims against the Kendallville Defendants relate back to the original complaint or that the statute of limitations should be tolled.

Accordingly, the Court finds that Eminger's claims against the Kendallville Defendants are time-barred and must be dismissed.

### ii. Claims against Ohio Defendants

The Ohio Defendants present slightly different issues. First, The Henry County Sheriff's Department is not a suable entity under either Indiana or Ohio law. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) ("[T]he Indiana statutory scheme does not grant municipal police departments the capacity to sue or be sued."); *Mathis v. Cuyahoga Cnty. Sheriff's Dep't*, 2010 WL 898650, at *1 (N.D. Ohio Mar. 12, 2010) ("Under Ohio law, a sheriff's department is not a legal entity subject to suit."). Thus, the Henry County Sheriff's Department will be dismissed.[5]

Second, despite "naming" this set of Defendants in multiple "counts" in the Second Amended Complaint, the complaint's only factual contention against an Ohio Defendant is that on October 24, 2022, Dep. Daman began to investigate alleged criminal conduct by Eminger based on information given to him by Kendallville police officers. (ECF No. 62 at 4). While theft charges were filed against her, those charges were dismissed on May 8, 2023.[6] (ECF No. 122-1). So, although the complaint nominally attempts to include the Ohio Defendants as liable for the Plaintiffs' claims for unlawful search and seizure, First Amendment retaliation, and false arrest and malicious prosecution, the *only* claim that could possibly meet Rule 8's notice-pleading standard is malicious prosecution as raised by Eminger alone. *See Ashcroft v. Iqbal*, 556 U.S. 662,

---

[5] Although the Henry County Sheriff's Department will be dismissed from the case, the Court will continue to refer to both Ohio Defendants in the plural for the purpose of consistency.

[6] The Court takes judicial notice of the public court documents in Eminger's Ohio case, which the Ohio Defendants included with their motion. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("[T]he district court may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment." (internal quotation and citation removed)).

678 (2009) (noting the complaint must provide more than "unadorned the-defendant[s]-unlawfully-harmed-me accusation[s]"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding the complaint need not provide overly detailed factual allegations, but it must provide enough factual support to raise the plaintiff's right to relief above a speculative level).

The Ohio Defendants argue that any claim Eminger attempts to make that arises from the criminal investigation led by Dep. Daman is untimely and  her claims are not saved by the relation back doctrine.

Under both federal and state law, a malicious prosecution claim "does not accrue until the criminal proceeding that gave rise to it ends in the claimant's favor." *Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013); *see also Heck v. Humphrey*, 512 U.S. 477 (1994); *Butt v. McEvoy*, 669 N.E.2d 1015 (Ind. App. 1996). Thus, Eminger's malicious prosecution claim against the Ohio Defendants accrued on May 8, 2023, when the charge against her was dismissed. (ECF No. 122-1). Given that any allegations against the Ohio Defendants appeared for the first time in the Plaintiffs' Second Amended Complaint on November 21, 2025, (ECF No. 62), Eminger's claim appears to be untimely.

As with the claims against the Kendallville Defendants, the Court finds that relation back does not save Eminger's claim against the Ohio Defendants. Under Rule 15(c)(1)(C), an amendment to a pleading that "changes the party or the naming of the party against whom a claim is asserted" relates back to the date of the original pleading so long as: (1) the amendment asserts a claim or defense arising out of the same conduct, transaction, or occurrence as the original complaint; (2) "within the period provided by Rule 4(m)," the party added by amendment "received such notice of the action that it will not be prejudiced in defending on the merits"; and (3) the added party "knew or should have known that the action would have been brought against

14

it, but for a mistake concerning the proper party's identity." *See Herrera v. Cleveland*, 8 F.4th 493, 496 (7th Cir. 2021).

Plaintiffs' only argument for relation back is that the claims against the Ohio Defendants "arise from the same chain of events connected to the underlying investigation and prosecution." (ECF No. 127-1 at 5). But that is an inaccurate recitation of both the facts and the governing law. What matters under Rule 15 is that the amended claim arises "out of the same conduct, transaction, or occurrence *as the original complaint*." Fed. R. Civ. P. 15(c)(1) (emphasis added). The original complaint concerned only the traffic stop and the search of Minks; as noted above, Eminger's arrest or any criminal investigation against her were nowhere in the record until the first attempt to amend the complaint in August 2025. Further, Eminger's problems with the Ohio Defendants for the earlier criminal investigation necessarily arose *before* the January 2023 traffic stop and Eminger's arrest. Lastly, nothing in the record reveals that anyone involved in this case, let alone the Ohio Defendants, had any notice of their potential involvement until Plaintiffs spontaneously added them to the Second Amended Complaint in November 2025. *See* ECF No. 62. Simply put, the addition of the Ohio Defendants to this case came out of left field, and allowing their addition at this point would be prejudicial and improper.

Accordingly, all claims against the Ohio Defendants must be dismissed.

### B. Remaining Claims

Because all of Eminger's claims are time-barred under the two-year statute of limitations, Eminger is dismissed from this case.[7] With her dismissal, so too go the claims for false arrest and malicious prosecution (Count II) and First Amendment retaliation (Count III), claims which were

---

[7] Eminger also can no longer serve as Minks' representative since Minks is now an adult. Simply put, based on the Court's rulings, this case is over as it relates to Eminger.

only factually linked to Eminger. With no factual allegations or viable claims against them, the Ohio Defendants are also dismissed. Additionally, the Kendallville Police Department is not a suable entity for purposes of § 1983 and must be dismissed. *See Sow*, 636 F.3d at 300.

After sorting through the noise, what remains are Minks's Fourth and Fourteenth Amendment claims against Sgt. Beall and Off. Fretz, as well as her *Monell* claim against the City of Kendallville for failure to train and supervise. The Kendallville Defendants concede that Minks has stated claims against Sgt. Beall and Off. Fretz, but they do argue that the City of Kendallville should be dismissed because Minks has failed to allege a plausible *Monell* claim.

A *Monell* claim seeks to hold a municipal entity liable for unconstitutional acts of its employees that "were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). This requirement exists to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). Thus, to allege a viable *Monell* claim, Minks must allege she was deprived of a constitutional right that can be traced to an official municipal policy or widespread government custom that caused her injury. *See Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023).

Minks' singular plausible attempt at a *Monell* claim seems to only encompass the City's failure to train, supervise, or discipline Sgt. Beall for his "repeated violations of department policy and constitutional standards." (ECF No. 62 at 9).[8] But Minks cannot hold the City vicariously liable under § 1983 for the actions of its employees, *Rossi v. City of Chicago*, 790 F.3d 729, 737

---

[8] While Plaintiffs nominally attempt to assert that the City violated its duty "to properly train, supervise, and discipline officers in areas including lawful detention, search procedures, use of force, and interactions with minors," ECF No. 62 at 9, these conclusory allegations—without specific factual support or even "boilerplate allegations of a municipal policy," *McTigue v. City of Chicago*, 60 F.3d 381, 383 (7th Cir. 1995)—are insufficient to support a *Monell* claim.

(7th Cir. 2015), nor can the City be liable for isolated incidents or "a few sporadic examples of an improper behavior," *Flores v. City of S. Bend*, 997 F.3d 725, 733 (7th Cir. 2021). Rather, Minks can only attempt to hold the city liable for its "own violations of the federal Constitution and laws," *First Midwest Bank ex rel. LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

Minks's general attempt at a *Monell* claim has multiple flaws. At a foundational level, she makes no claim that there is an official policy or practice that led to her constitutional injury. Indeed, the complaint specifically alleges that Sgt. Beall *violated department policy* with his actions that she claims caused her injury, meaning there could not have been a policy or practice that was the "moving force" behind her constitutional injury. *See Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023). Likewise, the only remaining relevant facts in the complaint are about the January 2023 traffic stop, which is by definition an isolated incident.[9]

Her failure-to-train claim does not fair better. "[F]ailure-to-train liability does not require proof of widespread constitutional violations before that failure becomes actionable; a single violation can suffice where a violation occurs and the plaintiff asserts a recurring, obvious risk." *Flores*, 997 F.3d at 731. Rather, "[a] municipality can be held liable under a theory of failure to train if it has actual knowledge of a pattern of criminally reckless conduct and there is an obvious need to provide training to avert harm, even if the prior acts have yet to result in tragedy." *Id.* at

---

[9] As to the other facts included in the Second Amended Complaint about Sgt. Beall's behavior—the 2019 curfew incident, the allegation that Beall interfered with Eminger's employment and landlord, etc.—the Court finds these facts irrelevant to the remaining constitutional claims. While Minks and Eminger may genuinely believe that this officer is engaging in a pattern of harassment towards them, "police harassment, without more, cannot form a basis for a § 1983 cause of action." *Arnold v. Truemper*, 833 F. Supp. 678, 682 (N.D. Ill. 1993); *see also Slagel v. Shell Oil Refinery*, 711 F. Supp. 378, 382 (C.D. Ill. 1993), *aff'd,* 23 F.3d 410 (7th Cir. 1994) ("[C]itizens do not have a constitutional right to courteous treatment by the police."); *Arnold*, 833 F. Supp. at 683 ("Inconvenience, aggravation and alleged injuries to reputation caused by police officers do not amount to [a constitutional] violation.").

733. In *Flores*, the plaintiff alleged that on multiple prior occasions a particular police officer drove at extreme speeds and that the City knew that its officers routinely drove over the 50 mile-per-hour policy limit, "but it took no steps to prevent this behavior—no training, no discipline, no reprimands." *Id.* At the motion to dismiss stage, the Seventh Circuit found that was enough to plausibly allege that the city acted with deliberate indifference in failing to address the known recklessness of its police officers. *Id.*

Here, while Minks generally claims the City failed to train officers on proper search procedures and interaction with minors, she is missing any allegation that the city had "actual knowledge of a pattern of criminally reckless conduct." *Id.* So even though a failure-to-train claim might survive with only a single violation, there is no plausible allegation that there was a *pattern* of criminally reckless conduct by Sgt. Beall or any other officers or that the City had any knowledge of it. Instead, what Minks has provided is one singular allegation of bad conduct by Sgt. Beall, which she openly admits violated department policy. There is simply not enough here for Minks's *Monell* claim to survive a motion to dismiss.  The City of Kendallville is dismissed.

Ironically, this case has come full circle and is in exactly the same posture it was when it began two years and 145 docket entries ago. Minks alone may proceed only with her Fourth and Fourteenth Amendment claims against Sgt. Beall and Off. Fretz in their individual capacities.[10] All other claims and parties are dismissed.

---

[10] An official capacity suit "is another way of pleading an action against an entity of which the officer is an agent." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). Because the Court has found that Minks has not stated a plausible claim against the City of Kendallville, she can only proceed with claims against the individual officers in their personal capacities.

## IV.    CONCLUSION

For these reasons, the Court GRANTS the Kendallville Defendants' Motion for Partial Judgment on the Pleadings (ECF No. 69) and GRANTS the Ohio Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 122). Eminger is dismissed as a plaintiff. The Henry County Sheriff's Department, Deputy Ryan Daman, the City of Kendallville, and the Kendallville Police Department are dismissed as defendants.

**SO ORDERED** on July 10, 2026.

s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT